# Ted Cunliffe, Ph.D.

299 Alhambra Circle, Suite 309, Coral Gables, FL 33134
CELL: (305) 484-0832; FAX: (305) 768-2272; VOICEMAIL: (305) 484-0832
E-MAIL: TedCunliffePhD@gmail.com. FL Lic #6979

Judge Federico A. Moreno
Senior Judge
United States Southern District of Florida
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue
Room 12-2
Miami, Florida 33128

August 18th, 2024

RE: <u>Defendant Michael Dean Drew (Case Number: 24-CR-20039-FAM)</u>

Your Honor, my name is Ted B. Cunliffe, Ph.D. and I am a licensed psychologist practicing in Miami, FL. I was retained by Ashley Kay, Esquire of the Federal Public Defender's Office in and for the United States Southern District of Florida to conduct a psychological evaluation of her client, Michael Dean Drew. Although a full assessment including the administration of a complete psychological and neuropsychological testing battery was planned, this was not possible due to difficulties gaining access to Mr. Drew and his variable mental status. However, he was evaluated on April 4th, 2024, and April 9th, 2024, for approximately 6 hours whereby two mental status examinations and the Wechsler Adult Intelligence Scale, Fourth Edition, and the Validity Indicator Profile were administered. Although it might seem as though 6 hours would be enough time, the assessment was severely compromised by Mr. Drew's variable mental status, rambling speech, and problems remaining on task. On both assessment dates, it was necessary to discuss at length the reasons for the assessment which limited the time available. In my professional opinion, the reason for his reticence was directly linked to his mental illness whereby he was paranoid and suspicious and displayed difficulties understanding when spoken to.

<u>An Overview of My Qualifications</u>
Your honor, I began my career with incarcerated individuals in 1982 when I worked as a juvenile correctional officer and later, an assistant superintendent in 2 juvenile correctional institutions in Canada. In 1987, I left the correctional department to attend university and received a Bachelor of Arts, 2 Master of Arts degrees, and a Ph.D. (Child and Youth Care from the University of Victoria in 1991, master's in psychology from the University of British Columbia in 1993 and a Ph.D. from the Palo Alto University/Standford University Consortium in 2002). I completed my psychology internship at the Medical College of Virginia in 2000 and post-doctoral fellowships at the Brown University School of Medicine in Providence, Rhode Island, and the Citrus Health Network/Florida Department of Juvenile Justice in Miami, FL in 2001 and 2004, respectively. Throughout my career, my research and clinical work has been focused upon providing treatment

**CONFIDENTIAL AND PRIVILEGED INFORMATION**
**For Professional Use Only**

and assessment services and conducting research with incarcerated men and women and defendants before the federal and state courts in Florida, Virginia, California, and Canada.

For the past 10 years, I have been in private practice as a forensic psychologist providing assessment services to the courts. However, before this, I completed 2 full-year practicums at the Federal Bureau of Prisons Federal Correctional Institution, Detention Center, and Work Camp-Dublin and was a contracted employee at the same correctional complex from 1995-1999. As a licensed psychologist, I worked as Psychologist and Mental Health Director in Florida and California between 2001 and 2015. In Florida, I served as Mental Health Director at Broward, Charlotte, Santa Rosa, and Lake Correctional institutions for a total period of approximately 10 years. During this time, my specialty was directing and managing the services provided for mentally ill inmates incarcerated in the Crisis Stabilization and Transitional Care Units, and the Correctional Mental Health Institute (the highest level of psychiatric care in the Florida Department of Corrections (FLDOC) located at Lake Correctional Institution in Clermont, FL). My positions involved overseeing the delivery of services, serving as the head of the Multi-Disciplinary Services Team, supervising the clinical work of psychiatrists, psychologists, nurses, and master's level counselors at the facilities, and providing specialized assessment services to the treatment teams when warranted.

Current Evaluation Mental Status Examination and Testing Results

Mr. Drew was interviewed for approximately 4 hours (3 hours on April 4th, 2024, and 1 hour on April 9th, 2024; an additional 2 hours were required to complete the WAIS-IV and VIP which resulted in a 6 hour total assessment time) whereby a clinical interview and 2 mental status examinations were conducted. During both assessment dates, his eye contact was variable, he appeared disheveled, and was very wary of my intentions. He appeared oriented to person, place, time, and situation on both occasions, but his affect was constricted and blunted with depressed and hypomanic mood. Although he denied experiencing hallucinations or delusions, his behavior and demeanor suggested the presence of a psychotic mood disturbance as evidenced by his paranoid statements and thought blocking (lapses in attention caused by attempts to inhibit or ignore internal stimuli). Although his remote or long-term memory appeared to be intact based upon the information he provided during the clinical interview, his recent and immediate memory appeared to be moderately impaired by his illness. His fund of general knowledge was average. Although his verbal abstraction was average, he experienced more difficulties with nonverbal abstraction (low average range) and his judgement was very poor.

The results of the WAIS-IV revealed low average intellectual functioning but the large disparity between his verbal (average range at the 32nd Percentile Rank) and nonverbal (very low or borderline at the 8th Percentile Rank) scores suggested the presence of a neurocognitive disorder. During the clinical interview, Mr. Drew indicated that he suffered a head injury with loss of consciousness at age 8 and commented, "I had headaches, I felt sick to my stomach, and I was having problems walking and talking for a couple of days after it." He also commented, "everything changed after that, I was a different kid, my behavior changed, and I was more

Drew, Michael Dean
24-CR-20039-FAM

destructive." Although a neuropsychological assessment was planned to investigate the possibility of a head injury, this was not possible because the assessment was not completed.

As part of the current evaluation, I reviewed his current and previous medical and mental health records from United States Bureau of Prisons (BOP), a forensic evaluation report completed by BOP Forensic Psychologist, Lisa Feldman, Psy.D., in 2017, and his medical and mental health records from the Florida Department of Corrections from 1992 to 2021. The records indicate that throughout his incarcerations since 1992, Mr. Drew has experienced severe adjustment problems arising from his mental illness including 5 Crisis Stabilization Unit admissions and 5 Transitional Care Unit admissions in the FLDOC. Although Mr. Drew reported a history of severe mental health problems beginning at age 12 and stated that he received both inpatient and outpatient care in the community between 1984 and 1992, these records were not available. Consistent with the results of the Validity Indicator Profile (a measure of response style, effort, and malingering), Mr. Drew's behavior and statements were consistent and revealed severe problems with psychiatric functioning. Based upon the data available and my observations of him, I diagnosed Mr. Drew with Bipolar I Disorder, Most Current Episode Hypomanic, Unspecified Neurocognitive Disorder, Alcohol, Cannabis, and Stimulant, Cocaine, Use Disorders, and Borderline (severe) and Antisocial Personality (moderate) Disorders.

Conclusions and Synopsis
The results of my interviews, brief testing, and observations of Mr. Drew indicate that he suffers from a range of severe psychiatric illnesses. Although he has received extensive treatment in the past, the records did not reveal neuropsychological assessment which appears to be a significant oversight as the presence of a head injury appears likely. However, this could not be confirmed without further testing and assessment by a neurologist. Despite these concerns, it is clear from the records from the BOP and FLDOC that Mr. Drew has experienced very severe problems with adjustment. Additionally, the FLDOC records indicate that he achieved some stability while treated at the Transitional Care Unit in 2021.

Although some departments of correction across the United States do not provide inpatient mental health services and severely mentally ill individuals are treated within the state Department of Health, the FLDOC has a long established and comprehensive inpatient treatment program. In the FLDOC, the services include Crisis Stabilization Units, Transitional Care Units, and the Correctional Mental Health Institute. As the name implies, the Crisis Stabilization Unit (CSU) provides intensive treatment for individuals experiencing a psychiatric emergency whereby the maximum length of stay is 1 month. If continued inpatient services are needed after the crisis has passed, they are referred to the Transitional Care Unit (TCU). The mandate of this unit is two-fold: 1) as a stepdown unit for inmates transitioning out of the CSU to ensure stability before they are returned to general population and 2) as an inpatient treatment for inmates who have chronic adjustment problems and do not possess coping skills sufficient to deal with the stress of incarceration. The focus for this latter group is to improve coping skills and adjustment, not just stabilization on medications. In some cases, individuals with severe personality disorders like Borderline Personality Disorder are treated with specific therapy programs intended to

Drew, Michael Dean
24-CR-20039-FAM

improve adjustment rather than a focus upon just pharmacological treatment. The records from the FLDOC records reviewed indicate Mr. Drew extensive treatment in these units. The records from 2021 indicate that although he achieved stability and was referred to the Designated Treatment Unit (DTU, a unit designed for individuals with chronic adjustment problems) in 2021, this transfer was not completed. Based upon my review of the available records and my own observations of Mr. Drew, this is precisely the type of treatment he requires. In my professional opinion, he is precisely the type of person the TCU and DTU were intended for and at the present time, he is unlikely to be successful without this type of treatment (coping skills, distress tolerance, and emotional regulation).

Recommendations
There is clear evidence from the records and assessment of Mr. Drew that he suffers from a range of psychiatric disorders which impact his behavior and ability to make reasoned decisions. Based upon the information available, he has been diagnosed with a severe mood disorder, a neurocognitive disorder, several substance abuse disorders, and 2 personality disorders. The writer's recommendations for treatment and placement are provided below:

1. Mr. Drew's presentation in the interviews and results of the record review suggest that he requires treatment for his psychotic-mood disorder (Bipolar I Disorder) and without the appropriate treatment, his problems with adjustment will continue. Therefore, it is suggested that he should be referred to a psychiatrist for evaluation to determine the most effective medication regimen for him.
2. Given his severe problems with adjustment and ongoing psychiatric treatment, a placement in an inpatient mental health facility is strongly recommended. Although he did not appear to be in crisis when he was evaluated by the writer, there is clear evidence that his ability to cope with incarceration is extremely poor. Placement in a unit like the FLDOC TCU described above is indicated.
3. Mr. Drew reported a head injury in 1980, when he was approximately 8 years old. However, there was no evidence in the records reviewed that this possibility had been adequately assessed. Therefore, a full neurological and neuropsychological workup is needed to determine if he may be suffering from a neurocognitive disorder related to a head injury. His behavior and WAIS-IV were consistent with this possibility and further assessment is recommended.
4. Given his extensive history of substance abuse problems, it is suggested that Mr. Drew should be evaluated by a substance abuse expert to determine if these problems are still active.
5. The results of the current assessment and the records indicate the presence of 2 personality disorders (borderline and antisocial). It is suggested that he would benefit from psychotherapy to address these problems. Research has shown that treatment with Dialectical Behavior Therapy and Criminal Thinking groups is an effective treatment for these kinds of problems. These services are readily available in the FLDOC inpatient units and the federal medical centers with the BOP. It is suggested that a return to placement in the general population of a correctional facility without the types of

Drew, Michael Dean
24-CR-20039-FAM

     treatment outline above would lead to further problems and a deterioration in his psychiatric condition.

6. In terms of specific placement where these services might be provided, the inpatient treatment units in the FLDOC at Charlotte Correctional Institution, Union Correctional Institution, and Santa Rosa Correctional Institution (SARCI) are recommended. A placement at SARCI is preferrable since he did well there in the past and he is familiar with the program there. If a BOP placement is being considered, placements at Federal Medical Center-Butner in North Carolina and Federal Medical Center-Fort Worth in Texas are recommended.

Should questions arise about the contents of this letter or if I may be of further assistance, please do not hesitate to contact me.

Respectfully submitted,

*[signature]*

Ted B. Cunliffe, Ph.D.
Licensed Psychologist
Fl. Lic. PY6979

**CONFIDENTIAL AND PRIVILEGED INFORMATION**
**For Professional Use Only**